**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Embassy Software Corporation

       v.                           Civil No. 06-cv-00391-JL
                                        Opinion No. 2009 DNH 006

eCopy, Inc.

**O R D E R**

     This case involves the validity of a copyright registration obtained by a corporation that has been administratively dissolved under state corporation law.  The issue is potentially dispositive because this court's jurisdiction requires the existence of a valid copyright registration.

     The plaintiff, Embassy Software Corporation ("New Embassy"), has sued[1] defendant eCopy, Inc., a Delaware corporation, alleging copyright infringement in violation of 17 U.S.C. § 501 (2000 and 2002).  The claim arises from what New Embassy claims is eCopy's unauthorized use of New Embassy's intellectual property, a portable document software program.  This court has jurisdiction

---

     [1] The lawsuit was initiated by a related but separate corporation of the same name ("Old Embassy") which, as explained below, was administratively dissolved by the State of New Hampshire.  An amended complaint substituted "New Embassy" as the plaintiff in this case.

under 28 U.S.C. §§§ 1331 (federal question), 1338 (copyright), and 1367 (supplemental jurisdiction).

Before the court is eCopy's motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).  ECopy asserts that this court lacks jurisdiction because the copyright registration at issue is invalid, having been obtained by an administratively dissolved corporation, or in its words, "an entity that did not exist."  After a hearing, and for the reasons set forth below, eCopy's motion is denied.


I.   **APPLICABLE LEGAL STANDARD**

During the litigation of this dispositive motion, both parties' filings presented to the court matters outside the pleadings.  "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d); DeMayo v. Nugent, 517 F.3d 11, 19 (1st Cir. 2008).  Rule 12(d) "is perhaps too infrequently invoked and too often overlooked.  In a proper case, it can be an excellent device for conserving time, expense, and scarce judicial resources by targeting early resolution of threshold issues."  Rivera-Gomez v. de Castro, 900 F.2d 1, 2 (1st

Cir. 1990) (decided under prior version of the rule).  The court
will proceed under the directive of Rule 12(d) in this case.

Summary judgment is appropriate where the "pleadings, the
discovery and disclosure materials on file, and any affidavits
show that there is no genuine issue as to any material fact and
that the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(c).  In making this determination, the "court
must scrutinize the record in the light most flattering to the
party opposing the motion, indulging all reasonable inferences in
that party's favor."  Mulvihill v. Top-Flite Golf Co., 335 F.3d
15, 19 (1st Cir. 2003).

## II.   BACKGROUND

The initial complaint and amended complaint in this action
created ambiguities as to the registration, ownership, and
ultimately the validity of the copyright in question.  These
ambiguities triggered eCopy's motion to dismiss because, as more
fully explained infra Part III, this court's subject matter
jurisdiction depends on the registration of a valid copyright.
Noting that the plaintiff carries the burden of establishing
subject matter jurisdiction, see Aversa v. United States, 99 F.3d
1200, 1209 (1st Cir. 1996), the court sua sponte ordered the
plaintiff to file a Second Amended Complaint "clearly alleging

3

facts establishing the proper claimants with respect to, and the actual possessors of, the . . . copyright during the entire period relevant to this litigation." Embassy Software Corp. v. eCopy, Inc., No. 06-cv-00391 at 4 (D.N.H. Oct. 30, 2008).  The court further invited supplemental briefing, id., of which only eCopy took advantage.  The Second Amended Complaint is the subject of this motion, and forms the basis of the facts as set forth below.[2]

Jeffrey K. Tidd, a software programmer and former employee of eCopy,[3] established Embassy Software Corporation ("Old Embassy") in 2001.  Old Embassy and eCopy contracted for Old Embassy's development of a portable document format software program referred to by the parties as "G1."  On November 7, 2003, unbeknownst to both parties, Old Embassy was administratively dissolved by the New Hampshire Secretary of State's office for

---

[2]  As required in a summary judgment analysis, this statement of facts puts the background facts in the light most flattering to New Embassy, indulging all reasonable inferences in its favor.  See Mulvihill, 335 F.3d at 19.  The court notes that these facts, as set forth in the pleadings, possess the clarity of a muddy river; the basic contours of the flow can be discerned, but not the existence of what lies beneath the surface.

[3]  In 1994, Tidd formed Tidal Software Corporation, which he sold to eCopy in 1995.  Tidal Software performed work for eCopy prior to the acquisition, and Tidd went to work for eCopy as its Vice President of Engineering.  Tidd left eCopy's employ in 1995.

failure to comply with routine filing requirements under New
Hampshire corporation law.  N.H. Rev. Stat. Ann. 293-A:14.21
(Supp. 2008) (amended 2004, 2006).

Almost three years later, in August, 2006, Old Embassy
registered the copyright to a new portable document format
software program called "G2."[4]  The copyright application listed
Tidd as author and Old Embassy as claimant.  Tidd and eCopy had
been wrangling over whether G2 was a derivative program developed
from a prior iteration of G1, or an entirely new successor
product.  Two months later, Old Embassy put the dispute into
suit, alleging in its complaint that it held a registered
copyright in G2.  In its answer to Old Embassy's complaint, eCopy
pointed out that Old Embassy had been administratively dissolved
in November, 2003, and alleged that the copyright registration of
G2 is therefore invalid because Old Embassy "did not exist" at
the time it purported to register G2 as copyright claimant in
2006.

Old Embassy's representatives attempted to reinstate its
active status under the statutory procedure in the New Hampshire

---

[4]  Actually, Old Embassy's registered agent listed "Embassy
Software, Inc.," rather than the corporation's correct name,
"Embassy Software Corp.," as the claimant with respect to G2, but
eCopy concedes, for the purposes of this motion, that that was a
clerical error and that Old Embassy was the intended copyright
claimant.

Business Corporation Act, <u>see</u> N.H. Rev. Stat. Ann. § 293-A:14.22-a (Supp. 2008), but were foiled by eCopy's pending counterclaim. An application for post-dissolution reinstatement, it turns out, must "[c]ontain a statement asserting that no lawsuits are pending against the corporation." N.H. Rev. Stat. Ann. § 293-A:14.22-a(a)(5). Tidd established a new corporation, also called Embassy Software Corporation ("New Embassy") in December, 2006, and assigned all of his intellectual property interest in G2 to New Embassy. New Embassy contends that as a result of these assignments (more fully explained below), "from and after [the administrative dissolution of Old Embassy], Tidd may have been effectively conducting business in his personal capacity, doing business as 'Embassy Software,' . . . [and] any and all causes of action arising out of eCopy's relationship with 'Embassy' have been assigned for convenience to New Embassy." (Second Am. Compl. ¶ 12 (parenthesis omitted).) The original complaint was amended in April 2007 to substitute New Embassy for Old Embassy as plaintiff.

New Embassy now claims that it holds a registered copyright to G2. Specifically, New Embassy's Second Amended Complaint alleges that New Embassy came to own the G2 copyright as follows: Tidd executed a quitclaim assignment to Old Embassy of his right, title, and interest he "might have had" in G2 in August, 2005

(id. at ¶ 16), a year before the G2 copyright was registered in Old Embassy's name.  Once it came to light during this litigation that Old Embassy had been administratively dissolved and could not be reinstated because of eCopy's counterclaim,[5] Tidd rescinded the Old Embassy assignment.  About a month after New Embassy was incorporated, Tidd again assigned his interest in G2, but this time to New Embassy.  Finally, in August 2008, 22 months after this lawsuit was initiated (by Old Embassy, as owner to the copyright by assignment alleging copyright infringement by eCopy), a registration amendment was filed in the United States Copyright office, (see Def's Supplemental Mem. Exhibit B) adding Tidd and his father, James Tidd, as additional claimants to the G2 copyright as of its original registration.[6]

ECopy moves to dismiss on the grounds that the alleged invalidity of the G2 copyright registration caused by Old Embassy's dissolution renders this court without jurisdiction.

---

[5]  The court will assume, as the parties do, that the counterclaim precluded reinstatement under N.H. Rev. Stat. Ann. § 293-A:14.22-a(a)(5), but does not adopt that proposition indisputable as a matter of law.

[6]  This amendment at least superficially contradicted Tidd's quitclaim assignment of the copyright to Old Embassy in August 2005.

III. **ANALYSIS**

Title 17 of the United States Code (the "Copyright Act") governs copyrights.  Section 411 provides that "no action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title."  17 U.S.C. § 411(a) (2000).  The First Circuit Court of Appeals has held that this rule is jurisdictional; a complete application is a jurisdictional prerequisite to filing suit in federal court for copyright infringement.  Torres-Negron v. J & N Records, LLC, 504 F.3d 151, 156 (1st Cir. 2007) (collecting cases); Data Gen. Corp. v. Grumman Sys. Support Corp., 36 F.3d 1147, 1160 (1st Cir. 1994) ("registration of the copyright is a prerequisite to suit under the Copyright Act").

Section 202.3 of the regulations promulgated by the Copyright Office prescribes the conditions for the valid registration of United States copyright.  It defines a copyright claimant as either the author of a work, 37 C.F.R. § 202.3(a)(3)(i) (2007), or a "person or organization that has obtained ownership of all rights under the copyright initially belonging to the author."  37 C.F.R. § 202.3(a)(3)(ii) (2007).[7]

_____

[7]  This second category "includes a person or organization that has obtained, from the author or from an entity that has

8

The argument advanced by eCopy is deceptively simple.  Since Old Embassy had been administratively dissolved at the time it was registered as G2 claimant, it "did not exist" as an "organization" under § 202.3(a)(ii), and thus the copyright registration was invalid.[8]  Without a valid registration, argues eCopy, this court lacks subject matter jurisdiction and New Embassy's infringement action must be dismissed.  See, e.g., Morgan, Inc. v. White Rock Distilleries, Inc., 230 F.Supp.2d 104, 109 (D.Me. 2002).  More specifically, eCopy argues that the G2 copyright is invalid because in registering the copyright, Old Embassy either knowingly or inadvertently identified itself as

---

obtained ownership of all rights under the copyright initially belonging to the author, the contractual right to claim legal title to the copyright in an application for copyright registration."  Id. at n.1.

[8]  Of course, the reason Old Embassy was not retroactively reinstated, thus presumably reestablishing the validity of its copyright registration, see N.H. Rev. Stat. Ann. § 293-A:14.22-a(f), was the mere existence of eCopy's counterclaim.  N.H. Rev. Stat. Ann. § 293-A:14.22-a(a)(5).  It is not lost on the court, however, that with a single pleading--its answer and counterclaim--eCopy put Old Embassy on notice that it had been administratively dissolved (with all of the ensuing ramifications for this court's jurisdiction if the dissolution voided the G2 copyright registration), and simultaneously blocked Old Embassy from retroactively curing the dissolution through a routine statutory reinstatement procedure.  N.H. Rev. Stat. Ann. § 293-A:14.22 (Supp. 2008).  This raises questions regarding the operation of the applicable Business Corporation Act provisions, and the effect of the counterclaim, that the court need not answer in order to decide this motion.

the copyright claimant--the error or implicit misrepresentation being that Old Embassy existed.  According to eCopy, "Tidd should have know[n] at the time of the G2 [r]egistration application that Old Embassy no longer existed."  ECopy goes on to claim that "even if Tidd's error was inadvertent, it is both material and prejudicial, and thus renders the G2 [r]egistration invalid." (Def's Reply Mem. in Supp. of Def's 12(c) Motion 7-8.)

    "The predominant rule is that an invalid registration (involving material errors, fraud, or an incomplete application) nullifies the federal court's subject matter jurisdiction." Torres-Negron, 504 F.3d at 160.  "[M]ost errors or mistakes in a copyright registration application will be inadvertent or immaterial, and thus will not invalidate the application (or any resulting certificate)."  Id. at 162 (citing Data Gen. Corp., 36 F.3d at 1161).  "In general, an error is immaterial if its discovery is not likely to have led the Copyright Office to refuse the application."  Data Gen. Corp., 36 F.3d at 1161.

    According to eCopy, "the error is material because the Copyright Office's regulations require a claimant to be a person or organization and therefore, the Copyright Office would have refused the application had it been aware that the identified 'organization' claimant, Embassy Software, Inc., did not exist." (Def's Mem. in Supp. of Rule 12(c) Motion 11-12.)  But this

10

argument--*that Old Embassy's false (and implicit) representation
that it was an organization was material because the copyright
regulations require a claimant to be an organization*--really just
begs the question.  It explains only why the representation is
allegedly false, but not why it is materially so.

Further, eCopy's argument mischaracterizes, or at least
misapprehends, New Hampshire corporation law.  Its memorandum of
law quotes the New Hampshire Business Corporation Act provision
governing administrative dissolution, N.H. Rev. Stat. Ann. § 293-
A:14.21, in support of its claim that "[b]ecause it was
dissolved, Old Embassy did not exist at the time it was the
purported copyright claimant."  (Def's Mem. in Supp. of 12(c)
Motion 9.)  But that very provision states that the opposite is
true:  "A corporation administratively dissolved <u>continues its
corporate existence</u> but may not carry on any business except that
necessary to wind up and liquidate its business and affairs under
[a separate provision] and notify claimants under [other
provisions]."  N.H. Rev. Stat. Ann. § 293-A:14.21(b) (Supp. 2008)
(emphasis added).[9]  Thus, Old Embassy did in fact exist, albeit

---

[9]  This provision has never been interpreted by the New
Hampshire Supreme Court, but its similar predecessor provision,
also continuing corporate existence beyond the date of
administrative dissolution, was held by the court to expand,
rather than limit the rights and remedies of dissolved
corporations.  <u>See</u>, <u>e.g.</u>, <u>Fischer v. City of Dover</u>, 131 N.H. 469,

with statutory limitations on its permissible conduct, at the time it was registered as the G2 copyright claimant.  It is therefore not clear that the specification of Old Embassy as claimant was false or erroneous to begin with, let alone knowingly or materially so.

This court's inquiry thus shifts to whether Old Embassy, in its limited post-dissolution capacity, could permissibly register or hold the G2 copyright.  ECopy contends that because it was administratively dissolved, it lacked the authority to register the copyright or take the assignment.  While § 293-A:14.21(b) certainly limits an administratively dissolved corporation's lawful activities to wind up, liquidation, and notification, it does not follow that such an entity somehow "exists" only for those purposes and "ceases to exist" for others.  If anything, eCopy's argument in this vein amounts to a claim that Old Embassy's acceptance of an assignment and ownership of the G2 copyright was an ultra vires act.[10]

---

473-74 (1989); MBC, Inc. v. Engle, 119 N.H. 8, 11 (1979) (same) (interpreting since-repealed N.H. Rev. Stat. Ann. § 294:98 (Supp. 1997).

[10]  An ultra vires act is one that is "unauthorized [or] beyond the scope of power allowed or granted by a corporate charter or by law."  Black's Law Dictionary 1559 (8th ed. 2004).

The fact that a corporate act is ultra vires, however, does
not mean that the act is necessarily void, or even voidable.
"According to the better reasoning, a corporation has the
capacity, even if it does not have the authority, to do an ultra
vires act although there are decisions more or less to the
contrary."  7A William Meade Fletcher, et al., <u>Cyclopedia of the
Law of Private Corporations</u>, § 3424 (Perm. ed., rev. vol. 2006)
(emphasis added).  Although eCopy strives mightily to cite those
contrary cases,[11] New Hampshire has expressly and definitively
adopted the "better reasoning" as described by Professor
Fletcher.  The ultra vires provision of the Business Corporation
Act provides:

---

[11]   One case cited by eCopy warrants consideration.   In
<u>Foamation, Inc. v. Wedeward Enterprises, Inc.</u>, 947 F.Supp. 1287
(E.D.WI 1996), an unfair competition action that questioned the
validity of a claimed copyright registration involving the famous
foam "cheese wedge" hats worn by Green Bay Packers fans, the
United States District Court for the Eastern District of
Wisconsin found (in the context of a request for a preliminary
injunction) the plaintiff's copyright registration to be likely
invalid where the plaintiff corporation did not yet exist at the
time it claimed authorship of the work in question.   <u>See</u> <u>id.</u> at
1297 n.8.   That ruling, however, was based on (1) misstatements
knowingly made (<u>id.</u> at 1297), <u>see</u> <u>Torres-Negron</u>, 504 F.3d at 162
(noting difference between inadvertence and fraud in deciding
jurisdictional issue), (2) a corporation that did not yet exist,
as opposed to being administratively dissolved at the time of
registration, <u>id.</u> at n.8, (3) a finding of pre-existence
authorship, an intrinsically affirmative activity <u>id.</u>,  as
opposed to the more passive receipt of an assignment of the work
in question, and (4) forfeiture of any copyright.   <u>Id.</u> at 1298.

>            **Ultra Vires.**  No act of a corporation and no
>            conveyance or transfer of real or personal
>            property to or by a corporation shall be
>            invalid because the corporation was without
>            capacity or power to do the act or to make or
>            receive the conveyance or transfer, but the
>            lack of capacity or power may be asserted [by
>            a shareholder, the corporation itself, or the
>            N.H. Attorney General under specified
>            circumstances].

N.H. Rev. Stat. Ann. § 293-A:3.04 (2001).[12]  Therefore, under New

Hampshire law, the assignment to Old Embassy and registration was

at least presumptively valid.  Further, there is no question that

eCopy is not among those statutorily authorized to assert the

ultra vires doctrine to challenge corporate conduct.  And even if

Old Embassy's conduct were not saved by the ultra vires statute,

it strains credulity to argue that the Copyright Office would

---

[12]  Curiously, eCopy cited this very provision in its
opposition to New Embassy's original counterclaim to defeat New
Embassy's assertion of the ultra vires doctrine as a defense.
Neither its written submissions nor its oral argument explained
why this statute defeats the plaintiff's assertion of the ultra
vires doctrine, but not its own.  At oral argument, eCopy argued
that the ultra vires provision was properly understood only to
prevent the inappropriate voiding of contracts entered by
corporate officers or agents that exceeded the corporate
authority under the articles of incorporation.  Ultra vires acts,
however, include not only acts unauthorized by a corporate
charter, but those (as eCopy characterizes Old Embassy's conduct
in this case) not authorized under the law.  See supra n.9; 7A
Fletcher, supra, § 3399 ("An ultra vires act or contract, . . .
according to the strict construction of the term, is one not
within the express or implied powers of the corporation fixed by
its charter, the statutes, or the common law.") (emphasis added).

have rejected the G2 registration application on that basis.
There is no reason to believe, and eCopy advances no persuasive
argument, that the Copyright Office would have analyzed Old
Embassy's conduct under applicable New Hampshire corporation law
to determine whether Old Embassy's ownership of the G2 copyright
was ultra vires, much less that it would have rejected the G2
copyright application on that basis.[13]

At oral argument, eCopy correctly pointed out that the
various statutory provisions that make up the Business
Corporation Act must be read and interpreted in pari materia.[14]
It then invoked a corollary of that canon of construction--that
where one statute deals with a subject in general terms, and
another does so more specifically, the more specific provision
will prevail in the event of a conflict, see SUTHERLAND, supra §
51:5--to suggest that New Hampshire's ultra vires statute is
trumped by its administrative dissolution statutes.   See

---

[13]   Even if the law were not so explicit on this point, the
administrative dissolution provisions cited by eCopy, §§ 293-
A:14.21 and 293-A:14.22, create the same inference by permitting
retroactive corporate status reinstatement through relatively
routine filings with the New Hampshire Secretary of State.

[14]   Separate statutes or provisions that deal with the same
subject are "commonly referred to as statutes in pari materia. .
. ."  2B N.J. Singer & J.D. Singer, Sutherland Statutory
Construction, § 51:1 (7th ed. 2008) ("SUTHERLAND").  Thus, they
all should be construed together."  Id. § 51:2; Williams v.
Babcock, 121 N.H. 185, 190 (1981).

15

generally, State v. Gifford, 148 N.H. 215, 216 (2002); see also
State v. Bell, 125 N.H. 425, 432 (1984).  Specifically, it
claimed that the ultra vires statute, N.H. Rev. Stat. Ann. § 293-
A:3.04, which would defeat its argument that the G2 copyright
registration is invalid, is rendered inapplicable by §§ 293-
A:14:21(b), limiting post-dissolution activities to wind-up,
liquidation, and notice, and § 293-A:14.05, a more specific list
of authorized post-dissolution activities.  See N.H. Rev. Stat.
Ann. § 293-A:14.05 (2001) (authorizing post-administrative
dissolution asset collection, liability discharge, property
distribution to stockholders, and "every other act necessary to
wind up and liquidate its business and affairs").  The
specificity of these latter provisions, eCopy argues, overcomes
the ultra vires statute's prohibition against the nullification
of Old Embassy's purportedly unauthorized receipt of the G2
copyright assignment.

Assuming, without deciding, that the G2 copyright assignment
was beyond the scope of wind-up or other activities authorized by
§§ 293-A:14:21(b) and 293-A:14.05,[15] the court nonetheless
rejects this argument.  These post-dissolution provisions are not
more specific treatments of general issues covered by the ultra

---

[15]  See 16A Fletcher, § 8134 (2003).

vires statute.  If anything, the converse is true.  The post-dissolution provisions explain what acts are authorized--and, by negative implication, unauthorized--after the administrative dissolution of a corporation.  The ultra vires statute, on the other hand, addresses the legal effect of, and who may challenge, any act deemed to be unauthorized for any number of reasons.

Moreover, in order to invoke this rule of statutory construction, a party normally must demonstrate that the statutes in question were enacted at different times and conflict each other.  See SUTHERLAND, supra, § 51:5.  The statutes in question were enacted contemporaneously, see 1992 N.H. Laws 255:1, and the ultra vires statute logically follows, rather than contradicts, the dissolution provisions.  See SUTHERLAND, supra § 51:1-51:5 (in pari materia rule, including temporal and substantive relationships between general and specific statutes).  Finally, as an extrinsic aid to statutory construction, the in pari materia rule and its corollaries "may not be resorted to if the statute," like the ultra vires provision of the Business Corporation Act, "is clear and unambiguous."  Id. § 51:1; see Buchholz v. Waterville Estates Ass'n, 156 N.H. 172, 173 (2007).

Thus, both prongs of eCopy's attack are defeated by New Hampshire's Business Corporation Act.  First, Old Embassy existed as an organization, albeit one with limited authority, at the

17

time of the G2 copyright registration.  Second, its acts of registering and receiving claimant status were within its capacity, if not its statutory authority, and these acts are not subject to any challenge by eCopy.  Accordingly, eCopy's motion for judgment on the pleadings, treated as a summary judgment under Rule 12(d), must fail.

This decision is limited to the issue of the validity of the G2 copyright registration on the grounds asserted by eCopy. Although both parties' submissions also addressed New Embassy's standing to sue, eCopy was clear that its dispositive motion was premised on the jurisdictional prerequisite of copyright validity, and not the validity of New Embassy's <u>status as copyright claimant</u>.  While this court is unprepared to grant judgment as a matter of law based on copyright invalidity as it relates to subject matter jurisdiction, it is not unmoved by eCopy's related argument.  As eCopy points out, it is by no means clear that New Embassy--the only plaintiff in the suit in its current procedural posture--actually holds a legal interest in the apparently valid G2 copyright.  While it would seem to make intuitive sense that Tidd intended to convey his authorship-conferred rights to Old Embassy, rescind the assignment, and then make a similar assignment to New Embassy (making it the proper plaintiff), the Second Amended Complaint contains inconclusive

18

and arguably inconsistent factual assertions.  A clerical error apparently made in registering the G2 copyright further clouds the issue.  <u>See</u> <u>supra</u> Part II, n. 4.  Finally, New Embassy's "Form CA" amendment of the registration, challenged by eCopy as an inappropriate vehicle to add claimants, contains information which arguably contradicts and potentially undermines the allegations in the Second Amended Complaint as they relate to standing.  <u>See</u> <u>id.</u>, n. 6.  Although the court ordered the plaintiff to file that amended pleading to clarify the ownership of record of the G2 copyright "during the entire period relevant to this litigation," the Second Amended Complaint raised as many questions as it answered, and may invite further standing-based challenges from the defendant.

## IV.  <u>CONCLUSION</u>

The defendant's motion for judgment on the pleadings, treated by the court as a summary judgment motion under Rule 12(d), is denied.  Nothing in this order precludes the defendant from making a summary judgment challenge to the validity of New Embassy's copyright claim, as opposed to the validity of the G2 copyright itself.  The parties are ordered to file a revised joint discovery plan under Rule 26 and Local Rule 26.1.

19

**SO ORDERED.**

Joseph N. Laplante
United States District Judge

Dated:  January 13, 2009

cc:  Lawrence D.W. Graves, Esq.
     Thomas J. Donovan, Esq.
     Jonathan W. Lent, Esq.
     Mark S. Puzella, Esq.
     Jeremy T. Walker, Esq.